## Case No. 15,722.

### UNITED STATES v. MARK'S SURETIES.

[See Case No. 11,990.]

---

## Case No. 15,723.

### UNITED STATES v. The MARS.

[1 Gall. 237.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1812.

NONINTERCOURSE—COASTING TRADE—FORFEITURE.

1. Goods of British growth, although not liable to duties, are prohibited from importation by Act March 1, 1809, c. 91 [2 Story's Laws, 1114; 2 Stat. 528, c. 24].

2. If a vessel, licensed for the coasting trade, be engaged in an illegal traffic, she loses the protection of her license, and is forfeited under the thirty-second section of the coasting act of February 8, 1793, c. 8 [1 Stat. 305].

[Cited in The Nymph, Case No. 10,389; U. S. v. The Paryntha Davis, Id. 16,004.]

[Appeal from the district court of the United States for the district of Massachusetts.]

This information contained two counts (1) For taking on board at a foreign port, with the knowledge of the owner and master, certain prohibited goods, to wit, 100 tons of plaister of Paris, with an intention to import the same into the United States, contrary to the act of March 1, 1809, c. 91 [2 Story's Laws, 1114; 2 Stat. 528, c. 24]. (2) For being engaged in a trade, other than that for which the schooner was licensed, contrary to the coasting act of February 18, 1793, c. 8 [1 Stat. 305].

G. Blake, for the United States.
B. Whitman, for claimants.

STORY, Circuit Justice. It appears by the evidence, that the Mars is a vessel duly enrolled and licensed for the coasting trade. That in the month of September, A. D. 1811, she proceeded from New Bedford to Passamaquoddy river, and while lying in the river, a little nearer the American than the British side, she received on board a cargo

---

[1] [Reported by John Gallison, Esq.]

---

of plaister of Paris from a brig and schooner, which lay near her. No names were on the sterns of these vessels, and no colors were shown by them. The witnesses, who composed the crew of the Mars, say, that they supposed them to be American, but do not know. The cargo was laden wholly in the night, according to some of the testimony, and according to other testimony, partly by day and partly by night. Besides the plaister, three barrels of sugar and one barrel of coffee were taken on board, and, with an evident intention of concealment, were stowed away, and studiously covered up in the run. Some testimony has been introduced, to show that this was the unauthorized act of the mate, without the knowledge or consent of the master. I do not, however, think that it is quite satisfactory. It comes in a shape liable to great suspicion, and it does not comport with the subsequent conduct of the master. The Mars returned from her voyage to New Bedford, and was there seized by the collector of the port.

It has been argued, that the plaister is not an article of foreign produce liable to the payment of duties, and consequently not within the prohibitions of the act of March 1, 1809. But to bring an article within that act, it is not necessary that it should be liable to pay duties. The language is express, that it shall not be lawful to import into the United States, &c. from any foreign port or place whatsoever, any goods, wares or merchandize whatsoever, of the growth, produce or manufacture of Great Britain, or any of her colonies or dependencies. There is no qualification of the terms of the act to dutiable articles, nor have I any doubt, that plaister is merchandize. It is not used merely as ballast, but is bought and sold in the market, as a commodity for consumption. Can there be a doubt that coals are merchandize? I do not, however, think that the first count, considering the terms in which it is drawn, is supported by the evidence; I lay it therefore entirely out of consideration.

As to the second count, the principal difficulty is to decide, whether the circumstances of the case present a legal presumption of prohibited traffic. For I hold it a salutary doctrine, that if a coasting vessel be engaged in illegal trade, she is to be considered as employed in a trade, other than that for which she is licensed, and of course forfeits the protection of her license. It will be recollected, that plaister is not the known produce of the United States, but is the known produce of the British province of Nova Scotia. The vessel lay very near the dividing line, in waters accessible to, and in common use by vessels of Great Britain and of the United States. At the time of this transaction, it was illegal to import plaister from Nova Scotia into the United States, and there could be no pretence, on the part of our citizens, of ignorance of the prohibition. The vessels, from which the Mars

received her cargo, were evidently disguised. Their names were concealed, and their characters unacknowledged. These circumstances, prima facie, present a presumption unfavorable to the claimant. This presumption was acted upon in the district court [case unreported], yet the claimants have laid by. They know with whom they dealt; they can, if they choose, explain the transaction, and show that the plaister had been legally imported. They have not so done, but have silently acquiesced in every presumption against them. I feel myself bound to say, that the transaction therefore admits of no fair and satisfactory explanation.

I affirm the decree of the district court, with costs. Condemned.